Our next case is 3D Surfaces, LLC v. Intel Corporation, 24-1909. Counselor Beloli? May it please the Court, Mark Beloli for 3D Surfaces, which is owned by the sole inventor in this case, Dr. Adrian Sephardi. Your Honors, this is a rare case where the Board rendered a claim construction of the key term at issue but then did not apply it in rendering its decision that the patents at issue were invalid. If the Board had actually applied its claim construction, it would have been compelled to come to the conclusion that both references are missing the key limitation and both references actually teach the exact opposite of what the Board's construction was. So the Board's construction was a very specific means plus function construction that the tessellation unit or the tessellate unit had the corresponding structure of a GPU, so you have to have a GPU with a computer graphics. In the Board's final written decision for the 299 patent, the Board states, quote, Patent owner particularly asserts here that Foley's disclosure concerning tessellation is limited to pretessellating primitive shapes such as triangles offline. Why is it limited that way? Nothing in Foley. There is no disclosure in Foley of doing tessellation within a graphics pipeline hardware of a GPU. There's no, the appellee's experts didn't point to any, weren't even asked to find one, and the Board doesn't point to anywhere in Foley that has a computer, a GPU graphics pipeline hardware with a tessellation unit in it. It has the opposite. Tessellation is always done, again, offline, which is the prior art as disclosed in the patent, and so the exact, Foley is just like the prior art. Do tessellation somewhere other than the graphics pipeline hardware. Before the Board, in your cert reply, you argued that petitioner's citations to Foley include portions of two separate chapters separated by nearly 150 pages. That's chapters 16 and 18. Why does that matter? I don't think that specifically matters, Your Honor. I think the key point is, again, there is nothing in Foley, which is a disclosed reference that teaches what is required by the Board's construction that it did not apply, which is you have a structure that's a GPU, has a computer graphics pipeline hardware, and within that, I think Your Honor has, no, okay, has this graphics pipeline hardware, and inside that graphics pipeline hardware needs to be a processor that does tessellation, that is programmed to execute the tessellating step of the microcode disclosed in the specification. That is not taught by either reference. Both references, again, teach exactly the opposite. Do tessellation somewhere other than the GPU and somewhere other than the graphics pipeline hardware. In your opening brief, you state that, I'm quoting, to make the inventive leaf as Dr. Sephardi. Sephardi, yes. Sephardi did. The prior art would need to be modified in the manner that Dr. Sephardi set forth in the specification of the 534 and 299 patents. But Intel and Dell did not advance a modification treaty, a theory, as they readily admitted. If we find that Dell and Intel did, in fact, present a modification argument to the Board, would you agree that the Board's decision is supported by substantial evidence? No, because there's no evidence of motivation to modify. Both experts, well, one, if anything, there's evidence of no motivation to modify. 3D Surfaces' expert says you wouldn't. Well, I'm asking you whether they advanced that theory. Oh, sorry, Your Honor, I thought you said, if we find that theory. I understand your, no, that theory was not advanced. It was in the petition, let me just find the appendix site for Your Honor, so the record is clear on this point. It's appendix 237, which is the petition, and it states there that a POSITA would have a reasonable expectation of success because implementations, algorithms for both surface types would be nearby combined alongside one another in the same system and for use for their intended purpose without modification, emphasis on without modification. So there's no, there was no theory of modification, which puts this right in the purview of the Oren Technologies v. ProPrint Express case, which is a 2021 Federal Circuit case, case number 1778, July of 2021. I'm going to let, rather than drilling further in, I'm going to let your opposing counsel deal with that question of whether they proposed it. I'm a little confused because it seems to me that the board found that the 501-SFARTI showed the entire process, and that all that's missing is that the tessellation part of that process in the patent, it's in its own GPU. Is that the problem? And that's your argument, that there's nothing that shows the tessellation part in its own GPU? It doesn't fully explain that all the different parts of the process can be done on separate GPUs? In separate processors, not necessarily separate GPUs, is my understanding. Isn't that enough? It doesn't have to specify tessellation if it teaches all the different parts of the process can be done on separate GPUs. I don't know that this difference that you're trying to tell me between processor and GPU, I don't understand or appreciate it if you want to try to explain, but I don't think that's the point. I thought fully, your beef with fully is it doesn't specifically say you can do tessellation on a separate GPU, but why does that matter if it teaches more broadly that you can do all parts of the process on separate GPUs? So Your Honor, what the invention is that is describing the specification, so Your Honor is correct that the process steps are disclosed by SFARTI, so we're in agreement there. And SFARTI also had this concept of control points, the prior SFARTI. And so you have the steps there, but what the next patent, these two patents, the 534 and 299, advocate for as the inventive step is in the prior art, you have your graphics pipeline hardware, and some of those steps in the process are done in this pipeline within the GPU, okay? But tessellation is always done outside and offline, and what Dr. SFARTI said, this is the hardware implementation, building upon his prior invention, he says, we're going to take where tessellation is done outside of this graphics pipeline hardware, and we're going to move it, and we're going to put it in, in the relevant order, in the relevant step inside the GPU as part of that graphics pipeline hardware. And both... Sure. I think that's what I said, generally, and Foley teaches using GPUs for all parts of the rendering process. That I believe I disagree, or I do disagree with Your Honor. Okay, but let's just assume it does, even if it doesn't mention tessellation. If we conclude that Foley teaches putting all parts of the rendering process in a GPU, then does it matter if it specifically mentions tessellation or not? That's... I mean, that is... To disclosure, not motivation to combine, I get it, those are some of the arguments. But I think your main argument is there's no disclosure at all, and I just don't see that. Okay, that is the main argument. There is no disclosure in either reference of tessellation within hardware. And that's my question. Why does it matter? If there was a disclosure of all the steps in tessellation in one reference, we'd be in an anticipation world. If Foley teaches a broader principle, it doesn't have to specifically teach tessellation, does it? Yes. Well, there needs to be... Well, one, there either needs to be a teaching of this limitation, this tessellation unit under the board's construction, or a modification. Or teaching that a skilled artisan would understand Foley to be teaching that tessellation could be done on a GPU, by saying all parts of the process can be done on a GPU. But not within the graphics pipeline hardware, which is a specific part of the board's construction that the board repeatedly ignores in its analysis. So, with respect to Foley, given the emphasis on it here, nowhere does Dell or Intel show that Foley teaches the tessellation unit inside a graphics pipeline hardware of a GPU. Foley actually, again, teaches the opposite. Tessellation is external to the GPU. There is no teaching or suggestion of tessellation within the GPU in Foley, which is the point of novelty of the asserted patents. Dell's experts and Intel's experts could not identify Foley teaching a tessellation unit under the board's construction. In fact, they said they were not asked, or he was not asked to do that. And the board says the evidence does not support patent owner's position that Foley is limited to tessellation outside the GPU. But that's like saying any textbook's not limited to what's in the text. Texts are limited to what's in the text. And there is no teaching of anything in Foley of taking tessellation in hardware and putting in that graphics pipeline hardware of a GPU in the correct space, because it has to be coupled under the board's construction between the transform and lighting units. Again, Foley teaches the opposite. An analogy here would be if I gave your honors directions that said take a left and then take another left, you wouldn't think I taught or suggested taking any rights. The same thing is here, where you have two references that teach exactly the opposite of the invention as disclosed in the specification, exactly the opposite of the two prior art references at issue. So when you combine them, when you combine things that are exactly the opposite twice, you don't arrive at the invention absent modification. And again, there was no modification theory. And modification and combination are two different theories. And they needed to be stated separately or advanced separately. And there is a line of cases within this court that when a theory of motivation to modify is not asserted, it is waived. The board can't make a finding of obviousness on a theory of motivation to modify prior art that was not in the petition, and that was not in the petition here. Those are, again, the Oren case and the Ida case. Just out of idle curiosity, if you told me to take a left and another left and another left and another left, wouldn't you effectively be telling me to take a right? Yeah. Why would I tell you to take two? Two lefts.  So you'd be going, you know, 90 or, yeah, 100, you'd be going exactly the opposite direction, which is exactly my point. We're talking about references that teach exactly the opposite of the invention as described in the specification as discussed in the file history because there was a double patenting obviousness rejection initially over the Sephardi reference, the Sephardi 501 reference, and the exact argument of what was not in Sephardi is what is also not in Foley, which is, again, that tessellation unit in the hardware, graphics pipeline hardware of the GPU, and that was the invention as disclosed in the specification over the prior Sephardi. Unless there's questions, I'll reserve.  Thank you. Let's hear from Counselor Tompros. Thank you, Your Honor. May it please the Court, Louis Tompros on behalf of Appellees Intel and Dell. This is a straightforward substantial evidence appeal. Let me start with Judge Wallach's question about motivation to modify. The question was, did we advance the motivation to modify or not? The answer is, yes, we did. And the Board found we did. The Board found we did specifically in Appendix Page 52. The Board says, such arguments directed to the obviousness inquiry help articulate petitioner's motivation to modify Sephardi to implement each stage of Sephardi's rendering process using Foley's individual processors in a graphics hardware pipeline. You can find that motivation to modify in our petition. Appendix Page 209 is the place that I think it is the most clearly shown. That is the place where we have a picture, where we take the pipeline. The picture has the caption, exemplary combination of 501 pub, that's Sephardi, and Foley. We take the Foley's teaching of graphics pipeline and have a box that modifies Sephardi by putting that box directly in it. Here is where I think the confusion lies, Your Honor, on the motivation to modify issue. What we articulated in our petition and what the Board found was that you could modify Sephardi by combining it with Foley. A combination of the two resulted in obviating the supposedly unique aspects of the invention. So if you're talking about did we articulate modifying Sephardi, we did by combining it with Foley. Did we articulate modifying Foley, we did by combining it with Sephardi. We did not say that you needed to further modify that combination because the combination itself discloses precisely what is claimed. The pipelining is all there in Foley, including individual processors within a GPU, and the specific articulation of the steps is articulated in Sephardi. So there was a motivation to modify by combining the two. As to where Judge Hughes' questions were on the question of substantial, I think that the question is whether there is actually a disclosure in Foley of the tessellation unit. What Foley specifically says, so Foley is a general purpose textbook, right? It was called like the Bible of graphics, a graphics Bible, something like that. It does indeed disclose pipelining. It discloses pipelining using individual units, and it does disclose specifically the idea of tessellation after transformation. So on appendix page 2055, Foley says, quote, each stage of the pipeline can be implemented in several ways, as an individual general purpose processor, as a custom hardware unit, or as a pipeline or parallel processor itself. So it does disclose each of the processes can be placed into an individual unit, including in a pipeline, including in a general purpose processor. And Foley itself then goes on to say, in the context of, quote, curved surfaces, which is what we're talking about with the patent here, we're talking about video game graphics curved surfaces, quote, tessellation should occur after transformation. That's appendix page 1970. So it has a box that shows the transformation box as one of the boxes in the graphics pipeline. It then says tessellation should occur after. So Foley, we think, does indeed disclose that, and it certainly is not limited to tessellation outside of the pipeline, as 3D Surfaces has argued. The board specifically made that finding, the board found at appendix page 48. The evidence does not support patent owner's petition that Foley is limited to a computer graphics process using pretessellation or tessellation outside of the GPU. To reject that finding, this court would have to find that there was no substantial evidence for that. Foley provides ample substantial evidence. The combination of each of the pieces of the pipeline, coupled with the description of tessellation occurring after transformation. And the only argument that I think I've ever heard made about Foley in response to that is this concept that those are in two separate chapters of Foley, which we agree, they are in two separate chapters. I think counsel for 3D Surfaces just today correctly acknowledged it doesn't matter. Foley is talking about these general purpose graphics principles. That does make this ultimately boil down to a straightforward substantial evidence appeal. Just so the court is clear, we do think this court has previously rejected and should continue to reject the notion that because reference A doesn't explicitly disclose something and reference B doesn't explicitly disclose it, that the combination cannot, as this court has repeatedly said, that misunderstands the law of obviousness. It is perfectly possible for A plus B to render obvious something that is not disclosed in either A or B. That's fundamentally the point of KSR and obviousness law in general. Unless the court has further questions, I don't have anything else. Thank you.  Mr. Miller, you have two minutes rebuttal. Thank you, Your Honor. On the issue of in the petition is motivation to modify there. It's not. When the board references motivation or modification theory at appendix 52, it doesn't say where in the petition that is. And at appendix 209, which counsel referenced, it's talking about motivation to combine the references. It's not saying to modify them, which is consistent with what their experts said and consistent with what was argued all down below. There simply is no motivation to modify theory or evidence to support that theory. That's why we're talking about modification. Because there was no such theory. It's two different elements. It's the process and then tessellation on a GPU. And Sovarte, whatever, shows the whole process and Foley teaches using GPUs to do all parts of the process. Combining them, you get the patent invention. I mean, Mr. Tompros just stated the correct view of the law, which is the references don't have to specifically disclose things separately. They can be combined to disclose the invention. And if they are, which the board found here, then we're looking at substantial evidence. I agree with that recitation of the law, Your Honor, completely. But there are circumstances, it's not every circumstance where A and B both don't teach it and then somehow they can be combined to get there. Without modification. If you find that Foley discloses using GPUs for all the different parts of this process, then in the processes described in Sovarte, then it shows using a GPU for all different parts of the process. Well, the rub there, Your Honor, is that Foley does not teach tessellation in the graphics pipeline hardware of a GPU under the construction. And that is basically the issue. Substantial evidence question, right? Not when their expert didn't point to it and we don't think there's anything in the text that's pointed to that has it either. Okay. Okay. Thank you. I appreciate you using the rub. The rub.  Any further arguments? The case will be taken under submission.